UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RMB FASTENERS, LTD., a Hong Kong limited liability company, ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) | No. 11 C 2071 |
| HEADS & THREADS INTERNATIONAL, LLC, a Delaware limited liability company, CAPITAL PARTNERS, INC., a Connecticut corporation, JPMORGAN CHASE BANK, N.A., a national banking association, PATRICK D. CAVANAUGH, as assignee for the benefit of the creditors of Heads & Threads International, LLC, and MICHAEL WRENN, an individual. ) ) ) ) ) ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Relying on assurances that Defendant Heads & Threads International ("HTI") was solvent, Plaintiff RMB Fasteners supplied HTI with inventory. Shortly thereafter, HTI entered into an "assignment for the benefit of creditors" for the purpose of liquidating all its assets and distributing the proceeds to HTI's creditors. In this action, Plaintiff demands return of the inventory, claiming that HTI had no intention of paying for the goods and is instead selling the merchandise at fire-sale prices to raise money to satisfy other creditors. The immediate issue before the court is representation: RMB has moved to disqualify the Proskauer Rose law firm from representing both HTI and Patrick Cavanaugh, who is acting as assignee for the benefit of HTI's creditors. For the following reasons, the motion to disqualify is denied.

## BACKGROUND

Plaintiff RMB is a Hong Kong limited liability company engaged in the business of manufacturing and exporting fasteners and fastener-related items. (First Am. Verified Compl. for Injunctive and Other Relief (hereinafter "Compl.") ¶ 2.) Defendant HTI is a Delaware limited liability company and global importer and distributor of industrial and construction fasteners and related

products. (Compl. ¶¶ 3, 12.) Since approximately September 2006, HTI has been a regular purchaser of RMB products. (Compl. ¶ 13.) On March 15, 2011, HTI, facing insolvency, discontinued its business and completed a Trust Agreement and Assignment for the Benefit of Creditors ("ABC"). (ABC, Ex. A to Pl.'s Supplemental Brief in Supp. of its Mot. to Disqualify Counsel for Defendants HTI and Cavanaugh (hereinafter "Pl.'s Supp. Brief").) Pursuant to the agreement, HTI transferred all its assets to Defendant Cavanaugh as trustee-assignee, whose duty is to oversee the "orderly liquidation of the assets and property of HTI, and the distribution of the proceeds there from to creditors of HTI in accordance with applicable law." (ABC ¶ 1.) Among the powers and duties HTI assigned to Cavanaugh is the power "[t]o settle any and all claims against or in favor of HTI, with full power to compromise, or in the discretion of the Trustee-Assignee, to sue or be sued, and to prosecute or defend any claim or claims of any nature whatsoever existing against or in favor of HTI." (ABC ¶ 3(j).)

On March 25, 2011, RMB filed the instant complaint against a number of Defendants: HTI; Cavanaugh, not individually but solely in his capacity as assignee for the benefit of creditors of HTI; Capital Partners, Inc., one of HTI's primary investors; JPMorgan Chase Bank, one of HTI's creditors; and Michael Wrenn, HTI's President and CEO. (Compl. ¶¶ 3-7, 16, 20.) RMB claims that in reliance on false assurances of HTI's solvency, RMB supplied HTI with more than $2,560,000 in goods. (Compl. ¶ 157.) RMB alleges that HTI solicited this transaction without any intention to pay for the goods, but rather with the intent of liquidating the goods to pay a debt owed to Defendant Chase. (Compl. ¶¶ 155-56.) The law firm Proskauer Rose LLP ("Proskauer") is currently serving as counsel for HTI and Cavanaugh, as Trustee-Assignee.

On April 22, 2011, Plaintiff moved the court to disqualify Proskauer as counsel for Cavanaugh. This motion was orally presented on April 27, 2011, whereupon this court directed the parties to submit simultaneous briefs providing any authority regarding this matter. The motion is now fully briefed and before this court.

## DISCUSSION

Because "disqualification of counsel deprives a party of the representation of their choosing," attorney disqualification is "a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Mercury Vapor Processing Techs., Inc. v. Vill. of Riverdale*, 545 F. Supp. 2d 783, 787 (N.D. Ill. 2008) (quoting *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993)). Additionally, motions to disqualify counsel "'should be viewed with extreme caution for they can be misused as techniques of harassment.'" *Id.* (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982)). As such, "'the moving party bears a heavy burden of proving facts required for disqualification.'" *Commonwealth Ins. Co. v. Stone Container Corp.*, 178 F. Supp. 2d 938, 943 (N.D. Ill. 2001) (quoting *Evans v. Arteck Sys. Corp.*, 715 F.2d 788, 794 (2d Cir. 1983)).

This court has generally adopted the American Bar Association's Model Rules of Professional Conduct ("ABA Model Rules") as its rules of professional conduct. *See* L.R. 83.50.[1] Relevant to this motion, ABA Model Rule 1.7 provides, in relevant part:

> [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

ABA MODEL RULES OF PROF'L CONDUCT R. 1.7(a).

Acknowledging the lack of case law on the particular issue of dual representation of a debtor-assignor and an trustee-assignee pursuant to an ABC, Plaintiff urges this court to apply rules

---

[1] Local Rule 83.50 establishes an exception to this general rule for "any matter not addressed by the ABA Model Rules or for which the ABA Model Rules are inconsistent with the Rules of Professional Conduct in the state in which the lawyer's principal office is located." In such cases, "any lawyer admitted to practice in Illinois is governed by the Illinois Rules of Professional Conduct; any lawyer not admitted to practice in Illinois is bound by the Rules of Professional Conduct for that state in which the lawyer's principal office is located." L.R. 83.50. The principal office of the Proskauer Rose attorneys in question is in Illinois. ABA Model Rule 1.7, addressing conflicts of interest, is identical to Illinois Rule of Professional Conduct 1.7. *Compare* ABA MODEL RULES OF PROF'L CONDUCT R. 1.7, *with* ILL. RULES OF PROF'L CONDUCT R. 1.7.

governing the appointment of a bankruptcy trustee and the employment of its counsel. The Bankruptcy Code allows a trustee to employ attorneys who "do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties." 11 U.S.C. § 327(a). The Code, in turn, defines a "disinterested person" as one who

> (A) is not a creditor, an equity security holder, or an insider;
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). Although there are differences between a bankruptcy proceeding and an ABC, there are obvious similarities as well, and these sources provide useful guidance in understanding an attorney's obligations in the ABC context. *See In re Peerless Mfg. Co.*, 523 F.2d 110, 112 (7th Cir. 1975) ("An assignee and his attorney perform somewhat the same function as a [bankruptcy] trustee and his attorney . . . .").

Under either of these standards—the ABA Model Rules or the standards proposed in the Bankruptcy Code—Proskauer's representation of both HTI and Cavanaugh, as Trustee-Assignee, does not present a concurrent conflict of interests. In fact, the interests of HTI and Cavanaugh appear to converge. Under Illinois law, the fiduciary duty a debtor-corporation previously owed to its shareholders is, upon insolvency, then owed to creditors. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 384 (7th Cir. 2008) (applying Illinois law). Thus, "[u]pon insolvency, "[t]he 'assets of the corporation must then be regarded as a trust fund for the payment of all its creditors.'" *In re Netzel*, 442 B.R. 896, 899 (Bankr. N.D. Ill. 2011) (second alteration in original) (quoting *Beach v. Miller*, 130 Ill. 162, 170, 22 N.E. 464, 466 (1889)). HTI was an insolvent corporation that, in an attempt to satisfy its fiduciary obligations to its creditors, discontinued business and assigned all of its assets to a trust for the benefit of its creditors. As such, HTI's interests align with those of Cavanaugh, who holds HTI's assets in trust for the benefit of HTI's creditors. *See Paul H. Schwendener*, 358 Ill. App. 3d 65, 74-75, 829 N.E.2d 818, 828 (1st Dist.

2005) ("[A]n assignment for the benefit of creditors 'is simply a unique trust arrangement in which the assignee (or trustee) holds property for the benefit of a special group of beneficiaries, the creditors.'" (quoting *Ill. Bell Tel. Co. v. Wolf Furniture House, Inc.*, 157 Ill. App. 3d 190, 195, 509 N.E. 2d 1289, 1292 (1987))). Moreover, Cavanaugh *is* the client for purposes of any litigation against HTI; HTI assigned Cavanaugh the power to settle, prosecute, or defend all claims for or against HTI.

Plaintiff contends that Cavanaugh, as Trustee-Assignee, owes a fiduciary duty to RMB as an individual creditor. Accordingly, Plaintiff argues that Proskauer cannot represent both HTI to defend against Plaintiff's claims and Cavanaugh, who Plaintiff claims has a duty to "fairly assess and investigate RMB's fraud and other claims in a manner consistent with that fiduciary duty to RMB." (Pl.'s Supp. Brief at 2.) As the court understands Cavanaugh's fiduciary duty, however, Cavanaugh owes the fiduciary obligations to the creditors as a whole, not to any particular creditor. *Cf. In re Netzel*, 442 B.R. at 899 (explaining that the "fiduciary duty that arises when a corporation becomes insolvent runs to all creditors of [the debtor] as a whole, not to any specific creditor"). Similarly, in the bankruptcy context, the trustee owes a duty of loyalty to the creditors. *See Fogel v. Zell*, 221 F.3d 955, 966 (7th Cir. 2000). If the trustee's duty was to any individual creditor, the trustee would breach this duty every time he or she sued an individual creditor to recover an avoidable preference or to avoid an unperfected security interest; yet trustees routinely bring such actions in bankruptcy proceedings. In the case of HTI, it is in the interest of the creditors as a whole for HTI and Cavanaugh to defend against a lawsuit that seeks to exclude certain property from the pool of assets to be liquidated, proceeds of which will be distributed pro rata to all of HTI's creditors.

Cases cited by Plaintiff in support of its Motion to Disqualify are factually inapposite. Plaintiff cites several cases recognizing a conflict of interest where an attorney represents both an entity and its fiduciaries accused of a breach of fiduciary duty. *See Roncone v. Ligurotis*, No. 92 C 4054, 1992 WL 346438, at *3 (N.D. Ill. Nov. 18, 1992) (disqualifying counsel from representing both a trust fund administrator accused of fiduciary violations and a union, members of which were the

beneficiaries of the trust); *McGinn v. DeSoto, Inc.*, No. 90 C 4481, 1990 WL 251753, at *3-4 (N.D. Ill. Dec. 21, 1990) (disqualifying counsel from representing both an employee benefit plan and its trustees, accused of fiduciary violations); *Wittenborn v. Pauly*, No. 87 C 5814, 1988 WL 33723, at *3-4 (N.D. Ill. Apr. 1, 1988) (disqualifying counsel from representing a corporation and individual defendant officers accused of fiduciary violations in a shareholder derivative action). In such circumstances, a conflict arises when the interest of the fiduciary in avoiding individual liability conflicts with the trust's or corporation's interest in recouping any misappropriated funds. But in this case, Plaintiff does not allege that Cavanaugh committed any breach of fiduciary duty.[2] The alleged fraud occurred before the ABC was established and Cavanaugh appointed Trustee-Assignee. Since Plaintiffs are not suing Cavanaugh in his individual capacity, but solely in his capacity as Trustee-Assignee, there is little threat that an actual conflict will sever the joint interest of Cavanaugh and HTI in benefitting the class of HTI's creditors as a whole.

Finally, Plaintiff cites two cases from the Bankruptcy Court for the District of Massachusetts, but neither of those cases support the disqualification of counsel here. In those cases, the court denied an award of fees to an assignee who was also the debtor's former counsel and had advised and assisted the debtor in entering into an ABC. *See In re TYS, Inc.*, 425 B.R. 26, 37 (Bankr. D. Mass. 2010); *In re Colony Press, Inc.*, 83 B.R. 862, 870 (Bankr. D. Mass. 1988). The court analogized the conflict inherent in that situation to the federal prohibition against debtor's former counsel serving as Chapter 7 or 11 trustee or serving as trustee's counsel. *In re Colony Press*, 83 B.R. at 866 (citing 11 U.S.C. §§ 327(a), 701, 1104). The court noted the conflict between the petitioner as former counsel to the debtor—"if Petitioner had learned in confidence from the Debtor of a preference or fraudulent transfer made by the Debtor, he would not be permitted to disclose this information"—and the petitioner as assignee, whose "obligation to be diligent in his duties under

---

[2] Although Plaintiff names Cavanaugh in Count VIII of its Complaint, concerning breach of fiduciary duty, the Complaint makes clear that the Count is "brought against Defendant Cavanaugh in his capacity as trustee-assignee for the benefit of the creditors of Defendant HTI." (Compl. ¶ 200.) None of the allegations in that count implicate Cavanaugh personally in any wrongdoing.

the Assignment would likely require some 'policing' of the Debtor to be sure that the Debtor was not holding out on the inclusion of any property in the Assignment." *Id.* at 865. In the case before this court, in contrast, RMB has not alleged that Proskauer served as counsel to the debtor prior to insolvency and the establishment of the ABC.[3] Moreover, HTI has discontinued business and given Cavanaugh the power to defend against lawsuits brought against HTI. Thus, the attorney-client privilege that existed between HTI and its attorneys before the ABC is now the assignee's to waive.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to disqualify counsel [27] is denied.

ENTER:

Dated: January 25, 2012

_____
REBECCA R. PALLMEYER
United States District Judge

---

[3] Even if this were the case, the finding of conflicts of interest in the two Massachusetts opinions appear driven by other facts not present in the case at bar. In *In re TYS*, the court concluded that the conflict of interest was manifest from the assignee's failure to disclose pertinent information to creditors (including disclosure of his role as Debtor's counsel) and flaws in the liquidation process. 425 B.R. at 35. In *In re Colony Press, Inc.*, the court observed that the terms of the Assignment granted "the Debtor the right to receive back the excess of the value of unencumbered property over the total claims of assenting creditors." 83 B.R. at 865. The agreement in this case differs; it calls for any surplus under HTI's ABC to be paid to HTI's equity security holders. (ABC ¶ 3(k)(vii).)